UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS DARBY,

                    Petitioner,                  Case No. 2:17-cv-11037
                                              Hon. Sean F. Cox
v.

DEWAYNE BURTON,

                    Respondent.
_____/

**OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS, (2) DENYING CERTIFICATE OF APPEALABILITY, AND (3) GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS**

       This is a habeas case filed by a state prisoner under 28 U.S.C. § 2254. Petitioner Thomas Darby was convicted after a jury trial in the Wayne Circuit Court of armed robbery. MICH. COMP. LAWS § 750.529. Petitioner was sentenced as a habitual felony offender to 30-to-45 years' imprisonment. The petition raises three claims: (1) Petitioner's conviction violated due process because he is actually innocent, (2) Petitioner was denied the effective assistance of trial counsel, and (3) the trial court erroneously denied Petitioner's request for a separate jury from his co-defendant. The Court will deny the petition because Petitioner's claims are without merit. The Court will also deny a certificate of appealability, but it will grant leave to appeal in forma pauperis.

## I. Background

       Petitioner and his co-defendant, Michael Darby, were tried in connection with the robbery and shooting of 80-year-old Stanley Sowa in front of his Detroit home.

1

Sowa testified at the joint trial that at about 3:30 p.m. on March 25, 2013, he was walking with his two grandnieces near his front porch. One of the two girls dropped something, and as Sowa went to pick it up he felt someone grab him and push him to the ground. The person tried to take his wallet. Sowa never saw this man's face. Sowa then saw another man holding a handgun. The second man lowered the gun to Sowa's head, and he heard a boom. The bullet penetrated the skin of Sowa's scalp, but luckily it was a grazing wound that did not penetrate his skull.

Alexus Bajos, Sowa's 13-year-old niece, testified that, as she and her sister Angelica were walking towards the porch, her sister dropped something. As her uncle was picking it up, two men walked up to him. The lighter-skinned man pointed a gun and told the two girls to go in the house. The other man attacked her uncle. Alexus identified Petitioner and Michael Darby as the perpetrators at trial. Alexus went to two lineups and photo show-ups, but she did not identify anyone.

Anjelica Bajos, who was 11 years old, testified that she saw two men coming from the alley as she and her sister were driving up to park in front of her uncle's house. As they approached the porch, her uncle leaned over to pick up candy that Anjelica had dropped. She saw one of the men grab her uncle's hands and the other man point a gun at the girls. The girls ran into the house and closed the door. Anjelica attended two lineups. At the first one, she picked someone as the man with the gun, and at the second lineup she picked Petitioner as the man without the gun. She also identified both defendants in court.

Heather Kitz-Miller testified to other-acts evidence. The jury was instructed that her testimony could only be considered as against Michael Darby. Kitz-Miller testified that on March 26, 2013, at 6:00 p.m., she went to a client's house with her 5-year-old son. As she approached the house, two men ran up to her. One man had a gun, and the other rushed her and took her purse. A shot was fired as the two men ran away. She identified Michael Darby as the man with the gun.

The guilty plea transcript from the Kitz-Miller case was read into the record. Michael Darby admitted during the plea to being the man with the gun who assaulted Kitz-Miller. He admitted he had an accomplice.

Detroit Police Officer Randolph Sturley testified that two days after the Sowa robbery he was in pursuit of a black Ford Escape when it struck a garage. Sturley knew the driver by name. Sturley also identified Petitioner and Michael Darby as the two passengers who ran from the car. He saw them sitting in the car during the chase, and after it crashed he saw them run in front of his vehicle. Sturley caught and arrested Michael Darby, who had dropped a handgun. Sturley testified to seeing Petitioner wearing a hoodie and gray sweatpants as he ran from the vehicle. Sturley saw Petitioner run through yards and jump over a fence.

Detroit Police Officer Andrew Berry testified that he received a report that an SUV had crashed into a garage following a police pursuit, and people were running away from the vehicle. Officer Berry caught Petitioner running across a street and into the backyard of a house about a block away from the crash site. Petitioner was wearing

different pants than the pants the person in the SUV was described as wearing, but Berry found muddy sweatpants when he backtracked towards the crash site.

Petitioner testified at trial that he was not at Sowa's home on March 25, 2013, and he did not rob Sowa. He denied that he was in the SUV that crashed. Petitioner testified that at the time of his arrest he was walking to a gas station when a police officer pulled up to the curb. Petitioner testified that he has a colostomy bag and cannot run well. He testified that the sweatpants recovered by the police were not his. Petitioner testified that he did not know Michael Darby until they were both arrested.

Petitioner testified that he knew officers Berry and Sturley from prior contact in the neighborhood. Petitioner testified that the police had tried to blame cases on him in 2008 and 2009. Petitioner identified the clothing seized by the police from him and noted that there was no mud on any of it, indicating that he did not run through a muddy field as described by the officers.

In rebuttal, Officer Berry denied ever having prior contact with Petitioner or harassing him. Berry testified that Petitioner's sweatshirt and boots were muddy when he was arrested, and he did not know what happened to the clothes after they were taken from Petitioner.

The defense called an officer from the Wayne County jail who testified that the jail did not clean the clothes. A stipulation was entered that Petitioner's clothes were booked into the jail and no one laundered or altered them.

Following arguments, instructions, and deliberations, the defendants were convicted of the charged offenses. Petitioner was subsequently sentenced as indicated above.

Petitioner requested and was appointed appellate counsel—the same attorney who represents him in this case—and counsel filed a claim of appeal. Petitioner's brief on appeal raised six claims:

I. Whether defendant was denied due process of law and a fair trial by the trial court's erroneous decision to deny his request for separate juries.

II. Whether defendant was denied a fair trial by the prosecutor's misconduct in arguing that defendant was related to the codefendant and was therefore guilty of participating in the robbery where the prosecutor had no evidence that they were related and the issue was collateral and irrelevant.

III. Whether defendant was denied a fair trial where the trial court gave a coercive instruction which did not comply with *People v. Sullivan* when the jury announced it was deadlocked; counsel was ineffective in failing to object.

IV. Whether trial counsel was ineffective for failing to investigate and/or produce potential witnesses who could have provided exculpatory evidence of an alibi, third-party guilt, and other evidence; defendant must be retried.

V. Whether defendant was denied his constitutional right to be sentenced on the basis of accurate information where several offense variables were misscored.

VI. Whether defendant Darby's Sixth and Fourteenth amendment rights were violated by judicial fact finding which increased the floor of the permissible sentence in violation of *Alleyne v. United states*, 133 S.Ct. 2151 (2013).

Appellate counsel also filed a motion to remand the case to the trial court so that Petitioner could expand the record in support of his ineffective assistance of counsel

claim. By order dated May 29, 2014, the Michigan Court of Appeals granted the motion to remand.

At the subsequent evidentiary hearing held in the trial court, defense counsel testified that Petitioner never indicated to him during their meetings that he had an alibi defense, and he did not tell counsel about any defense witnesses. Regarding the fact that Petitioner and his co-defendant were not related, rather then call Petitioner's mother as a witness, he and the other defense attorney decided to handle the issue with a jury instruction. The instruction informed the jury that the fact the two defendants shared the same name did not indicate that they were related. Finally, defense counsel testified that he did not attempt to call Michael Darby as a witness because of obvious Fifth Amendment considerations. He believed that the Michael Darby could not exonerate Petitioner without incriminating himself, and the co-defendant was maintaining his innocence at the time of trial.

Petitioner contradicted his attorney's testimony. He testified that he gave his attorney the names of alibi witnesses. He stated that he was with his sister Lucy Ridley at the time of the offense picking up her child from school. He further claimed that Lucy's boyfriend was with them, and that they returned home and that several other people were present at the home including his grandmother and cousins. Lucy Ridley testified that Petitioner was with her during the relevant time period. Petitioner's mother testified that Petitioner is not related to Michael Darby.

Petitioner proffered an affidavit from Michael Darby in which he stated that "[Petitioner] didn't commit no crime on March 25. We were not together. I feel this

innocent man shouldn't be put in prison for something he didn't do. This person didn't commit this crime with me at all. I did it with someone else." Dkt. 10-14, at 12. Michael Darby testified at the evidentiary hearing that he signed the affidavit. But he contradicted his affidavit on cross-examination at the hearing by testifying that he did not commit the crime against Sowa on March 25, and he ultimately conceded that he had no way of knowing, therefore, whether Petitioner was there. *See* Dkt. 10-12, at 25-29.

The trial court elected to credit the testimony of the defense attorney as true, and denied the motion. After reciting the trial evidence and the evidence presented at the evidentiary hearing, the trial court made the findings of fact, summarized as follows:

1. Michael Darby filled out the affidavit claiming that Petitioner did not commit the crime. But because his testimony at the evidentiary hearing claimed he was not present at the scene of the crime, the evidence did not exculpate Petitioner.

2. Michael Darby would never have testified consistently with the statements in his affidavit, and he would have testified at trial that he did not commit the crime and so did not know whether Petitioner did.

3. Petitioner never presented his counsel with an alibi defense, and if he had, defense counsel would have investigated the merits of raising such a defense.

4. Lucy Ridley's alibi testimony was not credible in light of Petitioner's failure to testify at trial where he was at the time of the crime.

5. The jury instruction regarding the defendants' last names was adequate and counsel was not ineffective for failing to call Petitioner's mother.

6. The affidavit from Thomas Darby and the alibi efforts were not credible or believable.

Dkt. 10-14, at 17-25.

The Michigan Court of Appeals subsequently affirmed Petitioner's conviction in an unpublished opinion. *People v. Darby*, 2015 WL 3757506 (Mich. Ct. App. June 16, 2015). Petitioner filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims. The Michigan Supreme Court granted Petitioner relief on his sentencing claim and remanded the case to the trial court to determine whether it would impose the same sentence had *People v. Lockridge*, 498 Mich. 358 (2015), been decided at the time of sentencing. The Michigan Supreme Court denied the remainder of the application because it was not persuaded that the questions presented should be reviewed by the Court. *People v. Darby*, No. 151882 (Mich. Sup. Ct. March 29, 2016) (Table).

On remand, at a hearing held on September 29, 2016, the trial court decided that it would leave the sentence intact. Petitioner appealed this sentencing decision - which is not at issue in the present case - to the Michigan Court of Appeals, and that proceeding remains pending in the state courts.

## II. Standard of Review

28 U.S.C. § 2254(d)(1) curtails a federal court's review of constitutional claims raised by a state prisoner in a habeas action if the claims were adjudicated on the merits by the state courts. Relief is barred under this section unless the state court adjudication was "contrary to" or resulted in an "unreasonable application of" clearly established Supreme Court law.

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam), quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

"[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) quoting *Williams*, 529 U.S. at 413. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S.86, 101 (2011), quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004); see also *Woods v. Etherton,* No. 15-723, 2016 WL 1278478, at *3 (U.S. Apr. 4, 2016) (habeas relief precluded if state court decision is "not beyond the realm of possibility [from what] a fairminded jurist could conclude.")

### III. Analysis

<u>A. Actual Innocence</u>

Petitioner first asserts that he is actually innocent of the offense and therefore his conviction represents a denial of due process. His claim relies on the fact that Michael Darby signed an affidavit stating that Petitioner did not commit the crime with him, but

that he committed it with someone else. Petitioner asserts that Michael Darby's affidavit is supported by the fact that he pled guilty to a similar robbery occurring the day after the Sowa robbery. Petitioner discounts Michael Darby's testimony at the evidentiary hearing in which he recanted the statement in his affidavit, suggesting that he did so because his appellate counsel advised him not to testify at all, and his conviction was still on appeal. Petitioner urges the Court to accept the statement in the affidavit as true and the contrary testimony as untrue. Petitioner relatedly asserts that his counsel was ineffective for failing to present written evidence of Michael Darby's statement that Petitioner was innocent at trial. The later allegation will be discussed below with Petitioner's other allegations of ineffective assistance of counsel.

In *Herrera v. Collins*, 506 U.S. 390 (1993), the Supreme Court held that "[c]laims of actual innocence based on newly discovered evidence" fail to state a claim for federal habeas relief "absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Id.* at 400; *see also House v. Bell*, 547 U.S. 518, 554-55 (2006) (declining to answer the question left open in *Herrera* of whether a habeas petitioner may bring a freestanding claim of actual innocence). Federal habeas courts "sit to ensure that individuals are not imprisoned in violation of the Constitution, not to correct errors of fact." *Herrera*, 506 U.S. at 400 (citations omitted); *see also McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013) ("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence"). Freestanding claims of actual innocence are thus not cognizable on federal habeas review, absent independent allegations of constitutional error at trial. *See Cress v.*

*Palmer*, 484 F.3d 844, 854-55 (6th Cir. 2007) (collecting cases). As stated, Petitioner's allegation of constitutional error related to his claim of innocence—ineffective assistance of counsel—will be discussed below. To the extent Petitioner seeks habeas relief based on a free-standing claim of actual innocence, however, the claim is not cognizable.

Furthermore, an affidavit which seeks to exonerate a petitioner and shift blame for the crime to another person is "treated with a fair degree of skepticism." *Herrera*, 506 U.S. at 423; *see also Lewis v. Smith*, 100 F. App'x 351, 355 (6th Cir. 2004). "Postconviction statements by codefendants [which attempt to exculpate a criminal defendant] are inherently suspect because codefendants may try to assume full responsibility for the crime without any adverse consequences." *See Allen v. Yukins*, 366 F.3d 396, 405 (6th Cir. 2004) (post-conviction affidavits of habeas petitioner's two codefendants were legally insufficient to establish that she was actually innocent, so as to toll the AEDPA's statute of limitations; affidavit was inherently suspect because the codefendant could have signed it to help petitioner without endangering his own interests).

Michael Darby dated his affidavit on July 29, 2013, and it was signed by the notary on August 9, 2013, after he was sentenced. *Darby*, 2015 WL 3757506, at *10. Michael Darby claimed in the affidavit that he knew Petitioner to be innocent of the crime because he committed it with someone else. *Id.* At the time Michael Darby wrote the affidavit he still faced adverse consequences for taking responsibility for the crime as he was appealing his conviction.

Nevertheless, when Michael Darby faced cross-examination regarding his affidavit at the evidentiary hearing, he decided to recant his statement that he committed the crime with someone else. Rather, Michael Darby inartistically attempted to both stick to the part of his statement that he knew Petitioner to be innocent but at the same time deny that he was present at the scene of the crime. *See* Dkt. 10-12, at 25-29. When the illogic of this position was pointed out to him by the prosecutor, ("if you were not there you cannot say who was or was not there, correct?"), Michael Darby was forced to concede the point. Dkt. 10-12, at 29.

Thus, even assuming the claim was cognizable, Petitioner has failed to demonstrate his actual innocence based on Michael Darby's affidavit. A valid claim of actual innocence requires a petitioner "to support his allegations of constitutional error with new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness account, or critical physical evidence - that was not presented at trial." *Schlup*, 513 U.S. at 324. "The *Schlup* standard is demanding and permits review only in the 'extraordinary' case." *House v. Bell*, 547 U.S. 518, 538 (2006) (citation omitted). To satisfy the actual innocence standard a petitioner must demonstrate that given the new evidence, it is more likely than not that any reasonable juror would have a reasonable doubt as to the petitioner's guilt. *House*, 547 U.S. at 538.

In light of the fact that Michael Darby recanted the statement in his affidavit that he committed the crime with someone other than Petitioner, Petitioner has not demonstrated that any juror would have a reasonable doubt. A reasonable juror could certainly conclude that the statements in the affidavit were not true after what happened

on cross-examination of Michael Darby. While Petitioner proffers reasons why the Court should accept the affidavit as true and the testimony as false, the standard asks whether in light of the new evidence *any* reasonable juror would have a reasonable doubt. The recantation easily might lead a juror not to have a reasonable doubt. Petitioner has not established his actual innocence.

Accordingly, Petitioner's actual innocence claim is not cognizable and otherwise without merit.

B. Effective Assistance of Counsel

Petitioner next asserts that he was denied the effective assistance of trial counsel. He argues that he informed his counsel of alibi witnesses that would account for his whereabouts at the time of the crime and that his mother would testify that he was not related to Michael Darby, but counsel failed to raise the defense at trial. He also asserts that his counsel was ineffective for failing to offer Michael Darby's written statement that Petitioner was innocent at trial.

To establish ineffective assistance of counsel, a defendant must show both that: (1) counsel's performance was deficient, i.e., "that counsel's representation fell below an objective standard of reasonableness"; and (2) the deficient performance resulted in prejudice to the defense. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

The test for prejudice is whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. On habeas review, the question becomes "not whether counsel's actions were reasonable," but "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington*, 562 U.S. at 105.

Petitioner has failed to demonstrate that he was denied the effective assistance of trial counsel or that the Michigan Court of Appeals unreasonably rejected his claims. With respect to Petitioner's first allegation of ineffective assistance of counsel, after reciting the constitutional standard, the Michigan Court of Appeals rejected the claim as follows:

> Although Thomas testified at trial, he did not offer any testimony regarding a possible alibi. The trial court considered this omission, along with other evidence, including its assessment of the credibility of the witnesses who testified at the *Ginther* hearing, in finding that Thomas failed to inform defense counsel of an alleged alibi, and in finding that his proffered alibi testimony was not credible. Where a factual question depends on the credibility of witnesses or the weight of evidence, an appellate court defers to the trial court's superior opportunity to evaluate these matters. *People v. Sexton (After Remand)*, 461 Mich. 746, 752 (2000). Giving deference to the trial court's assessment of credibility in this case, we find no clear err in the trial court's finding that Thomas failed to provide information regarding a potential alibi defense to defense counsel. Thus, Thomas did not make a good-faith effort to avail himself of an alibi defense. And without knowledge of a potential alibi to investigate, counsel's failure to investigate an alibi defense or call alibi witnesses cannot be deemed objectively unreasonable. Therefore, Thomas is not entitled to a new trial on this ground.
>
> Thomas also argues that defense counsel was ineffective for failing to introduce evidence, specifically the testimony of his mother, to establish that he and Michael did not have a familial relationship. As the trial court found, however, Thomas's mother would only have testified that defendants were not related as far as she knew. She would not have been able to rule out that there was some type of relationship. Regardless, the

prosecutor presented other evidence to establish an association between Thomas and Michael, including the testimony of Sowa's grandnieces, who identified both defendants as the persons who robbed Sowa, and the testimony of the police officers who arrested Thomas and Michael in the same car two days later.

And regardless of who drafted the jury instruction that precluded the jury from inferring a relationship or association from the mere fact that the two defendants had the same last name, considering that this instruction was included in the preliminary jury instructions given on the first day of the trial, we find no support for Thomas's argument that defense counsel belatedly decided to rely on the instruction to address the fact that both defendants had the same last name as a mere afterthought. And because the jury may be presumed to have followed its instructions, *Waclawski*, 286 Mich. App. at 674, and considering the other evidence of record, Thomas has failed to establish that his mother's testimony would have provided him with a substantial defense. Accordingly, we reject this ineffective assistance of counsel claim.

*Darby*, 2015 WL 3757506, at *9-10.

This decision was reasonable. While Petitioner testified that he told his counsel of his alibi defense, his counsel denied the allegation under oath, and the trial court chose to credit counsel's testimony. This determination was made in part based on the fact that Petitioner's trial testimony did not include any part of his alibi. This Court must presume the correctness of state court factual determinations such as the one made by the trial court regarding whether Petitioner informed his counsel about his alibi defense. 28 U.S.C. § 2254(e)(1)("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."). A petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Petitioner has not offered clear and convincing evidence to show that the factual determination made by

the state trial court was incorrect. Counsel testified to one version of the facts, and Petitioner testified to another. The state court chose to believe counsel and not Petitioner, and Petitioner has offered this Court no reason to upset that credibility determination.

Counsel did not perform deficiently for failing to investigate and present an alibi defense because Petitioner never gave him any indication or reason to explore that avenue of defense.

Next, with respect to the failure to offer Michael Darby's alleged written statement that Petitioner was innocent, the Michigan Court of Appeals rejected the claim as follows:

> We also reject Thomas's alternative claim that defense counsel was ineffective for not investigating that Michael could provide exculpatory testimony and, if Michael refused to testify on Fifth Amendment grounds, for not offering his written statement as evidence under MRE 804(b)(3). Even assuming that Thomas's counsel gave the affidavit purportedly signed by Michael to defense counsel, and that a proper foundation for authenticating it could have been established without Michael's testimony, an essential requirement of MRE 804(b)(3) is that the statement so far tend to subject the declarant to criminal liability that a reasonable person in the declarant's position would not have made the statement unless he believed it to be true. Whether a statement tends to subject the declarant to criminal liability depends on "whether the statement would be probative of an element of a crime in a trial against the declarant, and whether a reasonable person in the declarant's position would have realized the statement's incriminating element." *People v. Barrera*, 451 Mich. 261, 272 (1996). Thomas has failed to establish that the vague allegations regarding a March 25, 2013 crime would have been admissible under MRE 804(b)(3) to establish that Michael was one of the individuals who robbed Sowa. Accordingly, Thomas's counsel was not ineffective for not attempting to introduce the evidence. Counsel need not take futile actions. *Unger*, 278 Mich. App. at 256.

> And even assuming that that Michael would have been willing to testify at trial, Michael's testimony at the *Ginther* hearing supports the trial

court's finding that Michael would not have been able to provide testimony to exculpate Thomas. Because Michael was unwilling to admit his involvement in the Sowa robbery, he could not have credibly denied Thomas's involvement. Thomas has not established that defense counsel was ineffective. *Vaughn*, 491 Mich at 669.

*Darby*, 2015 WL 3757506, at *11.

The decision of the state appellate court with respect to this claim was reasonable. Michael Darby's testimony at the evidentiary hearing establishes that he would not have testified at trial that he knew Petitioner was innocent because he was at the scene of the crime and committed it without someone else. He testified that he was not present at the scene and therefore could not know who was there. Furthermore, the Michigan Court of Appeals determined as a matter of state law, even if a written statement similar to the affidavit produced at the evidentiary hearing was available at trial, it would not have been admissible. This Court cannot second-guess a state court's determination that a piece of evidence would be inadmissible under state law. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Accordingly, Petitioner's trial counsel was not ineffective for failing to offer evidence that Michael Darby admitted to committing the crime with someone else. No such admissible evidence existed to present.

Finally, the Court agrees with the assessment that counsel was not ineffective for failing to call Petitioner's mother to testify that Petitioner is not related to Michael Darby. The matter was adequately covered by the jury instruction that instructed the jury that just because the two defendants shared the last name did not mean that they were related or knew each other.

Petitioner has therefore failed to demonstrate entitlement to habeas relief with respect to his ineffective assistance of trial counsel claims.

## C. Separate Juries

Petitioner's final claim asserts that the trial court erred in failing to have a separate jury decide his case from Michael Darby's. He asserts that the fact that Michael Darby had the same last name unfairly suggested to the jury that the two men were related, and the fact that Michael Darby pled guilty to committing a similar robbery the day after the instant robbery tended to prejudice his defense before the same jury.

After reciting the relevant law for whether separate juries were required, the Michigan Court of Appeals denied the claim as follows:

> Thomas's counsel did not argue that separate juries were required to avoid prejudice to his substantial rights, but rather expressed a preference for separate juries as opposed to a jury instruction or a stipulation to address his concern with the other-acts evidence against Michael. Thomas's counsel was concerned that the jury might think that Thomas was Michael's accomplice in that robbery, even though Thomas was not identified and his name was not mentioned. However, in addition to the fact that the other-acts evidence did not indicate that Thomas was involved in the robbery of Miller, the trial court agreed to instruct the jury at trial that the evidence could only be considered against Michael, and not against Thomas. Under these circumstances, Thomas failed to affirmatively establish that his substantial rights would be prejudiced by a joint trial before a single jury. Thus, separate juries were not mandatory under MCR 6.121(C). We further hold that the trial court did not abuse by declining to order separate juries pursuant to MCR 6.121(D). As indicated, jury instructions are an appropriate means of alleviating any prejudice. *Hana*, 447 Mich. at 351. The court did not abuse its discretion in determining that the other-acts evidence admitted against Michael could be addressed through appropriate jury instructions. The trial court instructed the jury immediately before the other acts evidence was admitted, and again before jury deliberations began, that the other-acts evidence was admitted only against Michael and could not be considered in any way when deciding Thomas's guilt or innocence. Because these

jury instructions were sufficient to alleviate any prejudice, we find no basis
for relief.

*Darby*, 2015 WL 3757506, at *5.

Under clearly established Supreme Court law, there is no general right to a
separate criminal trial. In *Zafiro v. United States*, 506 U.S. 534 (1993), the Supreme
Court considered "whether Rule 14 [of the Federal Rules of Criminal Procedure]
requires severance as a matter of law when codefendants present 'mutually
antagonistic defenses.'" *Zafiro*, 506 U.S. at 535. Zafiro, however, was based solely on
Rule 14, and did not establish any rule of constitutional law. It is thus inapplicable to
Petitioner's state court conviction. Because the Supreme Court has not recognized a
specific right to separate trials, "a state trial court's refusal to grant severance only
mandates habeas corpus relief when (1) the joint trial 'resulted in the deprivation of a
specific constitutional guarantee such as the right to call witnesses . . . or the right to
confrontation,' or (2) when the joint trial abridged the defendant's fundamental right to a
fair trial as secured by the Fourteenth Amendment.'" *Turpin v. Kassulke*, 26 F.3d 1392,
1404 (6th Cir. 1992) (Feikens, D.J., concurring in part and dissenting in part)(quoting
*Jenkins v. Bordenkircher*, 611 F.2d 162, 168 (6th Cir. 1979)); accord *Hutchison v. Bell*,
303 F.3d 720, 731 (6th Cir. 2002). In fact, joint trials are favored, and the potential for
prejudice alone is insufficient to mandate severance. *See Stanford v. Parker*, 266 F.3d
442, 459 (6th Cir. 2001).

Here, the Michigan Court of Appeals correctly denied relief. None of Petitioner's
specific constitutional rights were implicated by the joint trial. Petitioner was not
prevented from introducing any evidence in his own defense due to his co-defendant's

presence, nor is this a case where a co-defendant's statement to police was introduced implicating Petitioner's confrontation rights.

In short, it constituted a reasonable application of clearly established federal law for the Michigan Court of Appeals to find that the failure to afford Petitioner a separate jury from Michael Darby did not render his proceeding fundamentally unfair.

As none of Petitioner's claim merit relief, the petition will be denied.

## IV. Certificate of Appealability

The Court will deny a certificate of appealability because jurists of reason would not debate the Court's analysis with respect to any of Petitioner's claims. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). Petitioner has not presented clear and convincing evidence to overcome the trial court's finding of fact following the remand hearing. The factual findings that Petitioner's alibi defense was not credible, that Petitioner did not tell his counsel about any potential alibi defense, and that Thomas Darby would not have testified favorably at trial are conclusively fatal to most of Petitioner's claims. Nor has Petitioner made a substantial showing of the denial of a constitutional right with respect to his separate jury claim. Therefore, a certificate of appealability will be denied.

The Court will grant Petitioner permission to appeal in forma pauperis because any appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3).

## V. Conclusion

Accordingly, the Court 1) **DENIES** the petition for a writ of habeas corpus, 2) **DENIES** a certificate of appealability, and 3) **GRANTS** permission to appeal in forma pauperis.

**SO ORDERED.**

s/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  September 19, 2018

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 19, 2018, by electronic and/or ordinary mail.

s/Jennifer McCoy
Case Manager